# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lindquist & Vennum, P.L.L.P., a Minnesota Professional Limited Liability Partnership, | Civil No. 10-4886 (DWF/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Louisiana Elastomer, LLC, | |
| Defendant. | |

Randall J. Pattee, Esq., Lindquist & Vennum P.L.LP., counsel for Plaintiff.

Stephanie A. Albert, Esq., Timothy D. Kelly, Esq., and Tracey L. Baubie, Esq., Kelly and Hannah, PA, counsel for Defendant.

# INTRODUCTION

This matter is before the Court on a Motion to Confirm Arbitration Award brought by Plaintiff Lindquist & Vennum, P.L.L.P. ("L&V"), and an Application to Vacate Arbitrator's Award brought by Defendant Louisiana Elastomer, LLC ("LAEL"). For the reasons set forth below, the Court grants L&V's motion and denies LAEL's application.

# BACKGROUND

LAEL is a Louisiana company in the business of rubber recycling. LAEL retained the legal services of L&V to represent the company in a Minnesota lawsuit. The parties executed an Engagement Letter, by which they agreed to arbitrate any disputes arising

from their legal services relationship with the American Arbitration Association ("AAA"). (Decl. of Randall J. Pattee ("Pattee Decl.") ¶ 3, Ex. B.) On August 5, 2010, L&V filed for arbitration claiming that LAEL had failed to timely pay its invoices to L&V. (*Id.* ¶ 2, Ex. A (the "Arbitration Award") at 1.) LAEL appeared *pro se* at the arbitration through its President and CEO, Mike Wells. (*Id.*) LAEL asserted that L&V's invoices improperly lumped together charges for legal services L&V provided to LAEL with charges for services provided to a separate legal entity, 2PCR LLC.

On or around October 13, 2010, the Arbitrator conducted a Preliminary Hearing with the parties via telephone. (*Id.* at 1-2.) During that call, the parties could not agree on a date for a one-day hearing. L&V preferred the date of November 8, 2010. Wells indicated that he was not available on November 8, 2010 because of "an impending refinancing transaction" but offered "no other availability in the limited time available in November and no specific reason other than having to sign these important documents." (*Id.* at 2.) LAEL instead indicated that it preferred a December 1, 2010 date. (*Id.*) L&V objected to the December 1, 2010 date claiming that LAEL was attempting to stall or delay the arbitration process in order to delay payment. (*Id.*) The parties were aware that the Arbitrator was not available from November 12 through November 30. (*Id.*) During the hearing, the Arbitrator also confirmed that LAEL did not intend to hire counsel. (*Id.* at 1.)

The Report of Preliminary Hearing and Scheduling Order noted that the hearing would commence on either November 8, 2010 or in early December (giving dates of December 1, 2010 and December 6, 2010). (Aff. of Stephanie A. Albert ("Albert Aff."

2

¶ 4, Ex. 3.)  At the Arbitrator's request, the parties were to confirm the date of the hearing, and Wells agreed to update the status of his availability, by October 22, 2010. (*Id*.; Arbitration Award at 2.)  A Notice of Hearing from the AAA dated October 13, 2010, noticed the hearing date for November 8, 2010.  (*Id*.)

On October 22, 2010, Wells sent both L&V and the AAA the following message via e-mail:

> As I have indicated in my email and in the October 12 hearing, my company is in the process of completing a financial transaction which is critical to the company's future.  Negotiations have gone well and its [sic] is now at the stage where we are beginning documentation.  However, I cannot say with confidence at this point that it will be closed before November 8.  I am requesting that the December 11 [sic] option be set for the hearing.

(Albert Aff. ¶ 2, Ex. 1.)

On October 25, 2010, counsel for L&V objected to Wells' request and asked that the arbitration hearing proceed on November 8, 2010.  (*Id*.)

On October 26, 2010, the AAA, at the Arbitrator's direction, transmitted the following order:  "We agree with [L&V] that there appear to be no compelling reason [sic] to further delay this arbitration which shall proceed as scheduled on November 8, 2010 at 8:00 a.m. . . ."  (*Id*.)

On November 5, 2010, Wells sent an e-mail to the AAA and counsel for L&V that reads in part:

> I am not sure where things stand regarding subject case.  However, I want to provide AAA with the status of my current circumstance so that you may inform all parties.  As discussed and agreed in the preliminary hearing, the hearing date was optional on two dates (November 8 or December 1) based on my availability on November 8.  In fact, those dates were selected based

3

> on other parties' non-availability during the time frame beginning with the balance of the week of November 8 through the remainder of November. I was asked by [the Arbitrator] in the preliminary hearing when would I be able to inform everyone as to my availability on November 8 and I said by Friday October 22. On 10/22, as I could not assure that I would be available on November 8, I requested the alternate date of December 1. Unfortunately, for my company's participation in this arbitration, [the Arbitrator] curiously selected the November 8 date.
>
> The financial close, that I have consistently indicated is critical to my company's survival, and the dynamics of the deal are driving my schedule. We received documents yesterday and getting more today and on Monday. The target for the close is Wednesday or Thursday. Parties to this financial closing and their attorneys, including government attorneys, are required to be present. My responsibility, as President and the primary signatory for my company, demands my physical presence in Vidalia/New Orleans. I cannot be in Minneapolis on Monday, nor have I had the time to prepare and file the brief due today for hearing date 11/8 (due 12/29 [sic] for hearing date 12/1).

(*Id.*)

On the same day, L&V responded, objecting again to the December 1 date and accusing Wells of delay and gamesmanship. (*Id.*)

Also on November 5, the Arbitrator sent the following e-mail:

> If [L&V] is ready to proceed and timely file its brief, we are ready to proceed on Monday November 8, 2010. If Mr. Wells cannot attend himself, he can delegate the matter to someone else. Waiting the last minute to indicate that he is unavailable on Monday is not acceptable and does not constitute a reasonable excuse to postpone this arbitration. We are ready to proceed as planned with or without [LAEL's] participation. This arbitration is not conditioned either upon the financing of the company. [LAEL] is hereby put on notice that should the arbitration proceed in its absence, the award will nevertheless be final.

(*Id.*)

Wells sent another e-mail to the AAA and the Arbitrator, wherein he reiterated that his presence was required in Louisiana for "financing talks," claimed that any

4

settlement or arbitrated decision would be moot if LAEL's financing is not completed, and indicated that delegation was not possible because of LAEL's small size. (*Id.*)

The Arbitrator commenced the arbitration hearing on November 8, 2010. LAEL did not appear. (Arbitration Award at 2.) The Arbitrator began by recounting the procedural history of the hearing date, and indicated in part:

> My intention is not to render an award by default because we are not all here. Today we're going to proceed with [L&V's] case, and I am going to hear [L&V]. And . . . since Mr. Wells is not here, and he's pro se . . . . I will be asking questions maybe a little more beyond the normal realm of questions an arbitrator asks . . . . [M]y intent is to ask questions almost on behalf of Mr. Wells, at least as far as I'm concerned. . . .
>
> . . .
>
> Hopefully, between now and the end of the morning before you finish your case, we'll have an opportunity to talk to AAA . . . [w]e'll see if we can get Mr. Wells on the phone for maybe 10, 15 minutes. And what I would like to propose is finish with [L&V's] case and, since we have a court reporter, have a transcript of this morning's hearing sent to Mr. Wells so he has the ability to review and see and hear, basically, what has been going on here.

(Albert Aff. ¶ 6, Ex. 5 (Tr. of the November 8, 2010 Hearing ("Tr. I")) at 6-8.)[1]

Shortly thereafter, an AAA representative called into the hearing. The Arbitrator asked that Wells be joined in the call. The Arbitrator conducted a phone conference with L&V, Wells, and the AAA participating. During the call, the Arbitrator first explained:

> [A]ccording to the information I have, you waited until Friday, November 5, to indicate that you could not possibly attend this hearing. . . . And we could not accommodate your wish because you waited until the last

---

[1] The Arbitrator also noted that the December date was unavailable "at this point" and noted that had Mr. Wells "talked to us sooner after I issued that order in October, we could have made things work out." (Tr. I at 10.)

> minute to indicate your inability to – and I'm not questioning the validity of your request. I'm just saying that as a practical matter, you waited until the day before. And December is a very busy month for me. And as a matter of fact, I'm going to be out of the country part of it. And I could not accommodate any other date we had contemplated back in October. . . . It's not a question of fault, sir. I'm just saying, we're going to keep moving.

(Tr. I at 12-13.) The Arbitrator then outlined how the arbitration would proceed: L&V would proceed with its case that day, the hearing would be recorded by a court reporter, a transcript would be made available to Wells, and Wells would be able to respond on behalf of LAEL and present LAEL's case either in person or by telephone on November 10, 2010. (*Id*. at 13-16.) The Arbitrator also indicated that he would be asking questions on LAEL's behalf. (*Id*. at 20.) Wells agreed to this arrangement. (Tr. I at 11-20; Arbitration Award at 2.)

Wells received the transcript of the November 8, 2010 hearing at 4:25 p.m. on November 9, 2010. (Albert Aff. ¶ 8, Ex. 7.) At 2:00 p.m. on November 10, 2010, the arbitration hearing was reconvened in the offices of L&V. The Arbitrator participated by telephone. (Albert Aff. ¶ 9, Ex. 8 (Tr. of November 10, 2010 Hearing ("Tr. II")).) Tim Kelly, an attorney with Kelly and Berens, appeared at the hearing and indicated that he had not been retained by LAEL, but that he had been asked by LAEL to appear to seek a continuance. (Arbitration Award at 3; Tr. II at 3.) Kelly offered to submit a letter he had sent to L&V containing the basis for his request for a continuance. The Arbitrator concluded that Mr. Kelly did not have standing to appear and declined to accept the letter. (*Id*. at 11-12, 16-17.)

6

The AAA attempted to reach Wells via telephone, who was supposed to have dialed into the conference. (Tr. II at 19.) The AAA was not able to reach Wells. (*Id*. at 19-20.) The Arbitrator confirmed with the AAA that LAEL had not informed the AAA that it had retained counsel or that Wells would be unable to attend the November 10 hearing. (Tr. II at 19-20, 23.)

The Arbitrator ended the hearing and directed counsel for L&V to file a motion by the end of the day setting forth its position on Kelly's appearance and any relief that L&V was asking the panel to consider. (*Id*. at 20-21.) The Arbitrator also indicated that he would grant Wells a day to respond before making a determination. (*Id.* at 21.)

L&V submitted a post-hearing letter, which was forwarded to Wells on November 11, 2010. (Albert Aff. ¶ 10, Ex. 9.) Also on November 11, 2010, the Arbitrator advised the parties that he would not enter L&V's post-hearing submission into the record because "it [did] not bring any new relevant information necessary for the rendering of an award" and notified the parties that he was closing the record. (Albert Aff. ¶ 11, Ex. 10.) On November 12, 2010, Wells sent a letter to the AAA complaining about the Arbitrator's decision and detailing his need to be in Louisiana until the closing of a financial transaction. (Arbitration Award at 4; Albert Aff. ¶ 12, Ex. 11.) The AAA notified Wells that his letter would not be submitted for consideration because the hearing had been closed and because L&V's post-hearing submission was not entered into the record. (*Id*. ¶ 13, Ex. 12.)

On November 30, 2010, the Arbitrator issued an award in favor of L&V. The Arbitrator explained:

> Based on the evidence in the record, this case is not legally or factually complicated. Credibility however is a crucial issue.
>
> Mr. Wells has had ample opportunities to squarely address the situation. He could have attempted to mitigate his questionable unavailability, especially in light of his historical relationship with [L&V]. Instead, he used last minute tactics in his attempt to delay the arbitration process.
>
> . . .
>
> Of note, Mr. Well's [sic] assertion that [L&V's] evidence relating to the amount owed by "the respective parties is an absolute and significant misrepresentation of the facts", constitutes a new claim, not supported by any evidence in the record. The exhibits speak for themselves and Mr. Wells has had ample opportunities to make sure the record was accurate. [LAEL's] argument that LAEL and 2P CR [sic] were two different entities is not supported by the evidence on record.
>
> Mr. Wells also claims he did not have sufficient time to hire counsel. This is a disingenuous statement, inconsistent with the truth. [LAEL], who is not unsophisticated, NEVER even alluded to the arbitrator nor to the AAA that it, (for LAEL) or he (for Mr. Wells) would consider retaining counsel. Clearly, Mr. Wells is attempting to rewrite history.
>
> On balance, [L&V's] rights in this arbitration must be granted the same amount of protection as [LAEL's] rights and we find that [LAEL] has failed to give reasonably reliable and credible "sufficient or good cause" to warrant selecting the December date. Respondent had ample and multiple opportunities to seek a fair assessment of its situation. Instead it attempted to derail the process of arbitration through unwarranted and disingenuous delaying tactics.

(Arbitration Award at 3-4 (citations omitted).)

In addressing the merits of the claims before it, including the question of whether LAEL owes a valid, past due, payable, and enforceable debt to L&V, the arbitrator ruled as follows:

> [L&V] in this case has the burden of proving that 1) it has a valid engagement letter, together with its terms and policies, and 2) that Respondent failed to meet its obligations to pay under such letter and

8

> 3) that no attenuating circumstance, at law or in fact, warrants a reduction of Respondent's obligations.
>
> [L&V] has met that burden.
>
> . . .
>
> The evidence in possession of both parties, clearly demonstrates that [LAEL] owes money to [L&V]. . . .
>
> By the fall of 2009, [LAEL's] total fees and costs were $248,651.81 of which it only paid $48,788.63, leaving $199,863.18 still outstanding as of the time of this award. . . .
>
> [LAEL's] disingenuous behavior justifies however that it be assessed all the costs and expenses of this arbitration including court reporter's costs and all administrative costs and expenses of the AAA, including the arbitrator's compensation.

(Arbitration Award at 4-5.)

The Arbitrator awarded L&V a total of $211,432.88. This amount represented $199,863.18 for the total fees owed to L&V by LAEL, $1,264.70 for the costs of the court reporter advanced by L&V, $4,050 for the AAA administrative filing and case service fee, and $6,255 for the arbitrator's fees and expenses. (Arbitration Award at 6.) The Arbitrator also ordered that:

> In the event that [LAEL] does not pay said sum in full within thirty days of this Award for any reason, [L&V] shall be entitled to seek recovery of interest at the highest legal interest rate allowed in the state of Minnesota from the date of this award and all costs and expenses, including reasonable attorneys' fees, costs and expenses, associated with the enforcement of this Award.

(*Id.*)

**DISCUSSION**

The arbitrator's award in this case is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.* Under the FAA, a court must confirm an arbitration award, except in the following narrow circumstances: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrator; (3) where the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. §§ 9-10(a).

This Court's review of an arbitration award is very limited and the arbitrator's decision is entitled to "an extraordinary level of deference." *Stark v. Sandberg, Phoenix & von Gontard*, 381 F.3d 793, 798 (8th Cir. 2004) (explaining that an arbitration award "must be confirmed even if a court is convinced that the arbitrator committed a serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within . . . his authority"). *See also Bhd. of Maint. of Way Employees v. Terminal R.R. Ass'n*, 307 F.3d 737, 739 (8th Cir. 2002) (noting that a court's "scope of review of the arbitration award itself is among the narrowest known to the law").

Here, L&V argues that the Court must confirm the Arbitration Award pursuant to Section 9 of the FAA. LAEL, on the other hand, argues that the Court should vacate the

Arbitration Award under 9 U.S.C. §§ 10(a)(3) and 10(a)(4).  The Court addresses the parties' arguments below.

**I.     9 U.S.C. § 10(a)(3)**

LAEL argues that the arbitrator engaged in misconduct by refusing to postpone the arbitration hearing and by conducting the hearing in the absence of LAEL in a way that improperly prejudiced LAEL and deprived LAEL of due process.  LAEL asserts that the Arbitrator's alleged misconduct is grounds to vacate the Arbitration Award under 9 U.S.C. § 10(a)(3).

In support, LAEL contends that customary practices were disregarded when the Arbitrator ignored the pre-existing conflict of LAEL at the original scheduling conference, and when the Arbitrator set the November hearing date despite LAEL's request for a later date after showing proper cause, particularly because no other continuances had been granted and because there were no other stated conflicts by other parties on the later-requested date.  LAEL argues that the Arbitrator unreasonably rushed LAEL, a *pro se* party, to the merits hearing to suit his own convenience and to accommodate L&V.

In addition, LAEL argues that the Arbitrator conducted the hearings in a procedural fashion that improperly prejudiced LAEL and deprived LAEL of due process.  With respect to the allegedly improper procedure, LAEL takes issue with the fact that the Arbitrator conducted the November 8 hearing in the absence of LAEL and without allowing LAEL to ask questions or cross-examine L&V's witnesses, gave LAEL only a limited time to review the hearing transcript before being expected to appear and present

11

its defense on November 10, and asked leading and suggestive questions during the November 8 hearing. LAEL also argues that the Arbitrator's refusal to accept and consider LAEL's post-hearing letter was improper because the Arbitrator prematurely closed the arbitration hearing, just hours after receiving L&V's post-hearing submission.

The Court's review under section 10(a)(3) is limited to determining whether the Arbitrator engaged in misconduct. *See, e.g.*, *Card v. Stratton Oakmont, Inc.*, 933 F. Supp. 806, 811 (D. Minn. 1996). The Arbitrator has wide discretion with respect to setting a hearing date and if there is "any reasonable basis" for the Arbitrator's decision, that decision should not be disturbed. *See, e.g.*, *id*. After a thorough review of the record, including the circumstances leading to the November 2010 arbitration, the Court concludes that LAEL has failed to demonstrate that the Arbitrator engaged in misconduct so as to warrant vacating the Arbitration Award. First, the record demonstrates that the Arbitrator considered Wells' request to hold the hearing on the December 1, 2010 date, but that the Arbitrator rejected that request, finding Wells' explanations regarding his availability to be vague, not credible, and lacking sufficient or good cause. Wells was notified on October 13 and again on October 26, 2010 that the hearing would proceed on November 8.[2] Wells had ample time to make arrangements to attend the hearing, to send

---

[2]     The October 13, 2010 hearing notice set a November 8, 2010 hearing date despite the fact that two dates were listed in the Report of Preliminary Hearing and Scheduling Order. The Court acknowledges that the notice for a November 8, 2010 hearing date could have been confusing. However, the AAA again notified Wells on October 26, 2010 that the hearing would go forward on November 8.

someone in his stead, or to again contest the date.  Instead, Wells then waited until the eve of the arbitration hearing to reiterate his arguments regarding his availability.[3]  On this record, the Court concludes that the Arbitrator had a reasonable basis to go forward with the November 8 hearing.

The Court also concludes that LAEL has not demonstrated that the Arbitrator conducted the hearing in a way that was procedurally unfair to Wells or otherwise unreasonable.  When Wells failed to show up for the November 8 hearing, the Arbitrator contacted Wells via telephone and outlined the procedure that would be followed.  The procedure allowed L&V to put on its case on November 8 with a court reporter transcribing the hearing.  Wells was then sent the transcript of the hearing to review prior to presenting the defense on behalf of LAEL.[4]  In addition, the Arbitrator asked questions on behalf of LAEL in an effort to protect LAEL's interests.  Wells was informed of and agreed to this procedure on the record.  While not physically present during the November 8 hearing, Wells was able to review the case presented against him and was

---

[3]     Despite the Arbitrator's unambiguous notification on October 26, 2010, that the arbitration shall proceed on November 8, Wells claimed on the Friday prior to the Monday arbitration date that he was "not sure where things stand" on the arbitration and indicated that he could not be in Minneapolis for the arbitration the following Monday and that he had not had time to prepare and file his brief.  Notably, the October 26 notice came after Wells' October 22 e-mail message, wherein Wells indicated that he could not say with confidence that the financial transaction would be closed by November 8.  Therefore, there was no reasonable basis for Wells to believe that the hearing would not go forward on November 8.

[4]     The Court notes that had Wells actually participated in the November 8, 2010 hearing, he would not have had the opportunity to review the transcript prior to cross-examining L&V's witnesses or putting on LAEL's case.

given the opportunity to present LAEL's defense and to cross-examine L&V's witnesses on November 10, 2010.  Instead of doing so, however, Wells sent Kelly, an un-retained attorney, to seek a continuance, even after Wells agreed to the November 10, 2010 date two days prior.  LAEL's decision not to participate in the November 10, 2010 hearing does not demonstrate misconduct on the part of the Arbitrator.

LAEL also argues that the Arbitrator's decision to close the record and render its decision rather than to include Wells' post-hearing submission denied LAEL due process.  The Court disagrees.  In his post-hearing submission, Wells did not argue or submit relevant information regarding the merits of the case.  Instead, Wells reiterated his complaints with respect to the setting of the hearing date.  Moreover, the Arbitrator similarly decided not to enter L&V's post-hearing submission because "it does not bring any new relevant information necessary for the rendering of an award."  (Albert Aff. ¶ 11, Ex. 10.)  The Arbitrator's decision to close the record on the November 10, 2010 hearing cannot be said to amount to misconduct.

In concluding that the Arbitrator did not engage in misconduct, the Court acknowledges that this case does not involve a textbook example of how to conduct an arbitration hearing.  However, while there were flaws in the arbitration, the Court cannot say that any other arbitrator would have proceeded differently given the unique facts of the case and the history of the dispute.  Moreover, considering the fact that this case hinged primarily on documentary evidence, it is unlikely that the result would have changed had the Arbitrator proceeded differently in any of the areas in which LAEL objects.

**II.     9 U.S.C. § 10(a)(4)**

In the Arbitration Award, the Arbitrator concluded that "[s]ince the arbitration clause [] did not provide for the allocation of attorneys fees incurred for this arbitration, such fees, costs and expenses shall be borne by each party, as incurred." (Arbitration Award at 5.)  The Arbitrator did however order LAEL to make full payment of the $211,432.88 award to L&V within thirty days and explained that if LAEL failed to do so, L&V would be entitled to seek recovery of all costs and expenses, including reasonable attorney fees, associated with the enforcement of the Arbitration Award.  (*Id*. at 6.)  LAEL argues that the Arbitrator's award of attorney fees, costs, and expenses to L&V exceeded the Arbitrator's authority, and should therefore be vacated under 9 U.S.C. § 10(a)(4), because the award runs counter to the parties' arbitration agreement.  The Court respectfully disagrees.  The Arbitrator correctly noted that the parties' arbitration clause did not provide for attorney fees and costs with respect to the arbitration itself.  The Arbitrator did not award attorney fees associated with the arbitration, but instead ruled that should LAEL fail to pay the arbitration award within a certain time period, L&V could seek costs and expenses (including reasonable attorney fees) associated with the enforcement of the arbitration award.  The Court concludes that this award did not exceed the Arbitrator's authority.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion to Confirm the Arbitration Award (Doc. No. [11]) is **GRANTED**.

2. Defendant's Application to Vacate Arbitrator's Award (Doc. No. [7]) is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 18, 2011                             s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge